Isidoros Thrappas (also known as Isidore, Siditis, Stephen, Steven and Steve Thrappas), et al. [1] v. Commissioner. Thrappas v. Commissioner
Docket Nos. 77728-77731.
United States Tax Court
T.C. Memo 1961-51; 1961 Tax Ct. Memo LEXIS 297; 20 T.C.M. (CCH) 281; T.C.M. (RIA) 61051; February 27, 1961
*297 Robert R. Ross, Esq., 532 Broad St. Bank Bldg., Trenton, N.J., for the petitioners. Max J. Hamburger, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined that petitioners are liable as transferees of assets of Chris Thrappas for deficiencies assessed against Chris Thrappas for the taxable years 1940 to 1956, inclusive. The liabilities determined by respondent against petitioners as transferees are as follows: Docket No.
Amount
Isidoros Thrappas
77728
$56,267.05 [2]
Ange Thrappas
77729
1,164.18
Helen Thrappas
77730
902.21
George Thrappas
77731
25,351.65
The issue is whether petitioners are liable "at law or in equity" as transferees of assets of Chris Thrappas, and, if so, the amount of the liability of each of them. Findings of Fact Some of the facts have been stipulated, and, as stipulated, they are incorporated herein by reference. Chris Thrappas, also known as Christ Thrappas (hereinafter referred to as Chris), was born in Chios, Greece, in December 1902. He emigrated to the United States in 1921. During the *298 period January 1, 1940 to June 9, 1958, he resided in Trenton, New Jersey, and engaged in the restaurant business. In 1948 he purchased a partnership interest in the "New York Restaurant" located at 131 1/2 North Broad Street in Trenton for $3,000.00. It was a small restaurant with a seating capacity of nineteen. Customers were served coffee, sandwiches, platters, pastry, etc. In 1952 he paid $1,200 to purchase the interest of his partner in the restaurant and became the sole owner. Chris did not file any Federal income tax returns for the taxable years 1940 to 1948 inclusive. He filed income tax returns for the taxable years 1949 to 1956, inclusive, with the collector, later the director, of internal revenue at Camden, New Jersey. In 1920 Chris married Lemonica Paricka in Chios, Greece. When he emigrated to the United States in 1921 he left his wife in Greece. He thereafter returned to Greece from time to time, and he and Lemonica had six children, all of whom were born in Greece. The two oldest children, daughters, never emigrated to the United States. Lemonica remained in Greece, throughout all the years of her married life until December 1956, when she emigrated to the United *299 States. Petitioner Isidoros Thrappas (also known as Isidore, Siditis, Stephen, Steven and Steve Thrappas) is the oldest son of Chris Thrappas. He will hereinafter be referred to as Steve. Steve was born in Chios, Greece, in 1934 and emigrated to the United States on December 23, 1947. Thereafter, he lived with his father, first in Bordentown, New Jersey, and later in Trenton, New Jersey, until June 9, 1958, when his father returned to Greece. After his arrival in the United States Steve attended school for about two and one-half years and thereafter he worked in the kitchen of the New York Restaurant helping his father. He did not receive any wages. His board, lodging and clothing were paid for by his father, who also furnished him with spending money. From the time he entered the United States until November 24, 1958, when he filed Federal income tax returns for the years 1955 and 1956, Steve never had filed an income tax return. He did not file returns for years prior to 1955 because he did not "make" $600 and understood that persons who did not earn $600 or more did not have to file an income tax return. Petitioner George Thrappas (also known as Georgis Thrappas) is a son of *300 Chris Thrappas. He will hereinafter be referred to as George. George was born in 1939 in Chios, Greece, and emigrated to the United States on July 10, 1952. From July 10, 1952, to June 9, 1958, he lived with his father in Trenton, New Jersey. After coming to this country he attended school for four years. From 1956 on he worked in the kitchen of the New York Restaurant. He did not receive any wages. His father furnished him with spending money. Prior and subsequent to the arrival of Steve and George in the United States, Chris, their father, had bank accounts in his name in several banks. After their arrival in this country he had them open bank accounts in each of their names, and an account in the names of "Isidore or Chris Thrappas" at the First Mechanics National Bank in Trenton. The amounts which were deposited in these accounts at the time they were opened and thereafter until the funds in each account were withdrawn in 1958 were supplied by Chris. The following schedule shows the balances in the bank accounts in the name of Chris at the end of each of the years 1948 through 1957 and the amounts withdrawn on June 4, 1958: First Mechanics
Trenton
Broad St.
Trenton
Hoboken
Nat. Bank
Trust Co.
Nat. Bank
Sav.
Fulton
Bank for
Account
Account
Account
Fund Soc.
Nat. Bank
Savings
#38783
#7881
#62881
#190027
#3096
#236544
12/31/48
$ 3,552.97
$ 4,203.10
$2,287.34
$2,158.54
12/31/49
4,589.34
8,250.43
2,287.34
2,191.02
12/31/50
4,633.59
10,208.66
2,287.34
2,223.98
12/31/51
4,701.89
10,309.95
2,287.34
2,257.44
12/31/52
4,747.99
10,413.27
2,287.34
$2,682.53
2,328.71
12/31/53
4,794.57
10,517.64
2,287.34
2,705.96
2,381.38
12/31/54
4,841.61
10,623.06
2,287.34
2,738.18
2,435.25
12/31/55
4,901.05
10,755.97
4,943.14
$ 7,049.49
2,770.64
2,493.42
12/31/56
10,074.36
10,972.12
8,009.29
10,588.48
2,803.42
12/31/57
10,074.36
10,972.12
8,009.29
10,588.48
2,803.42
6/ 4/58
10,074.36
10,972.12
8,009.29
10,588.48
2,803.42
*301 During the years 1948 and 1949 Chris had a checking account in the Trenton Trust Company. The balance in this account at the end of 1948 was $984.30 and at the end of 1949 $361.73. At the end of each of the years 1948 to 1953, inclusive, Chris owned United States bonds No. C31505338E in the amount of $100.00, and No. V58401G in the amount of $5,000.00. The following schedule shows the balances in bank accounts in the name of Steve (and the account in the name of "Isidore Thrappas or Chris Thrappas") at the end of each of the years 1948 through 1957 and amounts withdrawn on June 4, 1958: Trenton
Trenton
Broad St.
Trenton
First
Trust Co.
Sav. Fund
Nat. Bank
Banking Co.
Mechanics
Soc.
Nat.
Account Nos.
Account Nos.
Account
Account Nos.
Bank Account
27005, 34748
175617,
No. 81893
39077, 40703 *
No. 72342 ***
*
196107 *
12/31/48
$ 34.57
$ 449.00
12/31/49
114.62
481.36
12/31/50
349.84
485.16
12/31/51
748.27
490.98
12/31/52
1,107.38
$1,496.60
$1,001.30
1,046.57
12/31/53
3,024.95
3,046.49
2,374.63
2,018.81
12/31/54
3,456.25
5,064.50
3,996.65
$ 903.00
2,038.01
12/31/55
3,499.56
2,441.38
1,341.61
1,364.54
1,013.05
12/31/56
3,620.31
4,844.47
1,610.73
1,428.14
1,073.65
12/31/57
3,656.51
4,900.92
1,641.08
1,471.38
1,095.15
6/ 4/58 **
3,693.06
4,950.00
1,656.48
1,471.38
1,095.15
*302 The following is a schedule showing bank accounts in the name of George, the balances in those accounts at the end of the years 1952 through 1957, and the amounts withdrawn by George on June 4, 1958: Trenton Trust
Trenton
Company
Saving Fund
Account
Society Account
No. 30313
No. 30140
12/31/52
$ 81.38
$ 89.00
12/31/53
687.18
583.42
12/31/54
789.29
1,449.25
12/31/55
817.64
2,371.26
12/31/56
834.04
3,692.01
12/31/57
850.74
4,424.31
6/ 4/58
850.74
4,400.00
Petitioner Helen Thrappas (also known as Elleni and Ellene Thrappas) is a daughter of Chris Thrappas. She was born in 1937 in Chios, Greece, and emigrated to the United States with her mother, Lemonica Thrappas, and sister, Ange Thrappas, on December 15, 1956. Since *303 her arrival in the United States she has lived with her father, mother, Steve, George and Ange in an apartment in Trenton, New Jersey. During the years 1957, 1958 and 1959, she was employed by The H. D. Lee Company, Inc., in its factory in Trenton, New Jersey, and received compensation from that firm in the amounts of $849.23 in 1957, $2,153.04 in 1958 and $2,802.87 in 1959. On April 2, 1957 she opened a bank account (No. 198709) in the Trenton Saving Fund Society, Trenton, New Jersey, in which she deposited part of her earnings. During 1957 her deposits in this account totalled $417.87 and during 1958 $477.76. Interest in the amount of $1.68 was credited to her account during 1957 and in the amount of $4.90 during 1958. Petitioner Ange Thrappas (also known as Angelica, Anggelite, Anggeliga, Aggeliki and Aggelike Thrappas) is a daughter of Chris Thrappas. She was born in 1936 in Chios, Greece, and emigrated to the United States with her mother, Lemonica Thrappas, in December 1956. During the years 1957 and 1958 Ange Thrappas was employed by the La Mode Dress Factory, in Trenton, New Jersey, and received compensation from that firm in the amount of $1,946.05 during the year 1957 and *304 $3,032.84 during the year 1958. On April 2, 1957 she opened a bank account (No. 198710) in the Trenton Saving Fund Society, Trenton, New Jersey, in which she deposited part of her earnings. During the year 1957 her deposits in this account totalled $550 and during the year 1958 $596. During the year 1957 no interest was credited to her account and during the year 1958 interest in the amount of $18.18 was credited to her account. Chris Thrappas made a visit to Greece in 1956 and stayed there for a period of about nine months. In February, March and April of 1957, a revenue agent who was conducting an examination of his returns for the years 1954 and 1955 attempted to reach Chris and was informed by Steve that his father was in Greece. On July 15, 1957, Chris and Steve visited the internal revenue office in Camden. Steve's presence was necessary due to his father's limited knowledge of English. Chris' returns were discussed. When asked whether he had any records from which the income and deductions in the returns could be verified, he told the agent that he had no records. The agent then attempted to reconstruct Chris' income by the net worth method, and asked Chris about his assets *305 and living expenses. Chris told the agent that he had only one bank account. Another meeting between the revenue agent and Chris was held on July 18, 1957. Steve was also present. At this meeting Chris signed a statement prepared by the agent from figures received from Chris which showed that increases in his net worth, plus nondeductible living expenses, for the years 1954 and 1955 were in excess of the income reported in his returns for those years. On that day, after being warned that it would be an offense not to reveal all of his assets, Chris admitted that he had had five Series H United States Bonds having a face value of $10,000 each, and had received interest on these bonds. In view of Chris' relatively large and unexplained net worth uncovered by the revenue agent, the latter called in a special agent of the Internal Revenue Service in August 1957 to work with him for the purpose of determining whether a formal joint investigation was warranted. An investigation conducted by them uncovered additional bank accounts and assets. On October 1, 1957 Chris was interrogated by the special agent. The revenue agent and Steve were present. At this meeting Chris admitted that *306 he had bank accounts in several banks in Trenton in the names of his sons Steve and George and an account in the name of himself and Steve. Chris told the special agent that the deposits in these accounts were made "from his moneys". The interrogation also disclosed the existence of Safe Deposit Box No. 306, in the Broad Street National Bank, registered in the names of Chris and Steve. After the conclusion of the October 1 interview Chris gave the two agents permission to visit the safe deposit box and told Steve to go with them. Steve and the agents went to the Broad Street National Bank and inventoried the contents of the safe deposit box. The contents on that date included, among other items, (a) a receipt showing payment by Chris of an insurance premium of $236.60 on April 5, 1957, on a life insurance policy on the life of Steve (the beneficiaries named in the policy are Christ T. Thrappas and Lemonica Thrappas); (b) one bank book of the Fulton National Bank of Lancaster, Pennsylvania, showing a balance of $2,786.94, in which Chris was named as depositor; (c) currency in the amount of $9,250, of which $800 was in a package with a paper slip around it on which was written the *307 name of Steve; and (d) the following Series H, United States Treasury Bonds, having a face value of $10,000 each: Serial No.
Issue Date
Owner
X 39483H
April 1955
Isidoros or Chris
Thrappas
X 19907H
April 1954
Chris or Isidoros
Thrappas
X 39361H
March 1955
Chris or Isidoros
Thrappas
X 39462H
April 1955
Chris or George
Thrappas
X 675H
Sept. 1954
Chris or George
Thrappas The money used to purchase the five United States bonds came from Chris. The $800 in cash in the banded package was money Chris had set aside for the purpose of enabling Steve to make a trip to Greece. In October 1957 Chris retained Sidney P. Skokos, a Trenton attorney, to represent him in connection with his income tax problems, and Skokos retained Benjamin Garb, a certified public accountant, to work with him. On October 28, 1957, they discussed Chris' income tax liability at a meeting which was attended by Chris and Steve. Garb made an investigation of the tax liability of Chris predicated on the net worth method and determined that his liability for income taxes, additions to tax (penalties), and interest were in excess of $100,000. On October 28, 1957, Skokos, *308 Garb, Chris and Steve had a meeting at which the tax liability of Chris was discussed. In February or March 1958 Skokos and Garb conferred with representatives of the Internal Revenue Service and discussed settlement of Chris' tax liability. It was tentatively agreed that an offer by Chris of $51,000 would receive favorable consideration by the Internal Revenue Service and Skokos and Garb had a meeting with Chris and Steve in April 1958 at which the terms of the proposed settlement were explained. At the conclusion of this meeting Skokos and Garb were authorized by Chris to make an offer of $51,000 to settle his tax liability, and informed the internal revenue representatives of this authorization. In May 1958 Steve visited Garb's office and asked for figures showing how they arrived at the amount of $51,000 and told Garb that he had a friend to whom he wished to show them. Garb told Steve that he would be willing to show the figures to Steve's friend, but refused to turn them over to Steve. On May 12, 1958, Steve asked the revenue agent for a copy of the figures stating that he wanted to show them to another accountant. On May 14, 1958, the agent explained to Steve the terms *309 of the proposed $51,000 settlement and gave him a written statement showing how the amount was computed. Steve had photostat copies made and gave them to Chris. The following morning Chris took the statement to New York City and showed it to Anthony Seeralli, an accountant. Chris returned to Trenton the same day and told Steve that the accountant had said that the $51,000 figure was too high and advised him to offer the Government $25,000. In May 1958, Chris told Steve to go to the vault in the Broad Street National Bank, open the safe deposit box, and bring the five $10,000 bonds in the box to the "store" [restaurant]. Steve went to the bank on or about May 26, 1958, withdrew the bonds from the box, and returned to the store and gave them to Chris. Chris then told Steve to take the three $10,000 bonds on which his name appeared as co-owner to the bank and have them cashed. He gave similar instructions to George with respect to the two bonds on which George's name appeared as co-owner. Steve took one bond to the Trenton Banking Company and two bonds to the First Mechanics National Bank of Trenton and signed a "Request for Payment" on the back of each bond. The request for payment *310 signed at the Trenton Banking Company is dated May 26, 1958, and the two signed at the First Mechanics National Bank are dated May 27, 1958. The bank officials gave Steve receipts for the three bonds and informed him that it would take about thirty days to get the money. Steve returned to the restaurant and gave the receipts to Chris. Chris then gave them back to Steve and told him to hold them. George took the two $10,000 bonds on which his name appeared as co-owner to the Trenton Saving Fund Society and on October 27, 1958, signed a "Request for Payment" on each bond. A bank official who verified his signature gave George an envelope and told him to forward the bonds to the Federal Reserve Bank and that a check would be mailed to him at his address. On the day Steve took the bonds from the safe deposit box, he also withdrew the $9,250 in currency, took it to the restaurant, and gave it to Chris who "used to carry [it] back and forth to work" in a brown paper bag. About $3,000 of this money was used to pay attorney's fees. About June 1, 1958, Chris sent Steve to Garb's office. Steve told Garb that Chris had received advice from tax experts that his tax liability could be settled *311 for $25,000 and felt that settlement should be effectuated at $25,000, in lieu of the $51,000 to which Garb had committed Chris in negotiations with the Internal Revenue representatives. Garb told Steve that he did not think this could be done. Garb arranged a conference with the Internal Revenue representatives on June 3, 1958. At that conference Steve made an offer to settle Chris' tax liability for $25,000. The offer was rejected and Steve was told that the Government would institute proceedings to collect Chris' liability for tax and additions to tax (penalties) of approximately $100,000. The representatives of the Internal Revenue Service knew that Chris then had a fully validated passport which would permit him to leave the United States at any time. After the conference ended on June 3, 1958, Steve returned to the restaurant and told Chris about the rejection of the $25,000 settlement offer. His father was upset and made up his mind to leave the country. The next morning, June 4th, Chris told Steve to go home and get all the savings account books and bring them to the restaurant. Steve did this, and Chris on the same day told him to take the bank books registered in his (Steve's) *312 name, and the book covering account No. 72342 at the First Mechanics National Bank registered in their joint names, go to the banks, and withdraw the funds in these accounts. Steve followed his father's instructions, went to the banks, signed withdrawal slips, received the money, and went back to the restaurant and turned the funds over to his father. Steve never had custody of the money after he turned it over to his father and never saw it again. On June 4, 1958, Chris gave his son George two bank books which covered accounts in the Trenton Trust Company and Trenton Saving Fund Society in the name of George and told George to go to these banks and withdraw the money in those accounts. George went to the banks on that day, filled out and signed withdrawal slips, received the money, took it back to the restaurant, and turned it over to his father. He has never seen the money since that time. During part of the year 1958, Chris had savings accounts in his own name in the following banks: Account
No.
First Mechanics National Bank
38783
Trenton Trust Company
7881
Broad Street National Bank
62881
Trenton Saving Fund Society
190027
Fulton National Bank, Lancaster, Pa.
3096
*313 When Steve went to the first four of these banks on June 4, 1958 to withdraw the money in accounts in these banks in his name, he got some withdrawal slips and brought them back to the restaurant. Chris signed these slips, gave Steve the four bank books covering the accounts in these four banks, and told him to go to the banks and withdraw the money in the accounts. Steve presented the signed withdrawal slips at the Trenton Trust Company, Broad Street National Bank, and Trenton Saving Fund Society, withdrew the money in accounts numbered 7881, 62881 and 190027, went back to the restaurant, turned the money over to his father, and never had custody of, or saw, the money thereafter. When Steve presented the withdrawal slip on Account No. 38783 at the First Mechanics National Bank, the bank refused to turn over the money in that account to him, and Chris personally went to that bank with the withdrawal slip and withdrew the money in Account No. 38783 on June 4, 1958. Approximately two weeks prior to June 4, 1958, Chris gave Steve the savings bank book covering Account No. 3096 at the Fulton National Bank, Lancaster, Pennsylvania, and told him to go to a Trenton bank and have the bank *314 arrange for the transfer of the money in his account in the Fulton bank to Trenton. Steve went to the Trenton bank, told them that his father wanted the money transferred to him in Trenton, and was told it would take a few days before his father would get the money. When the check arrived from the Fulton bank, the Trenton bank notified his father. Steve went to the Trenton bank, got the check, took it back to the restaurant, and his father endorsed it. Steve then went back to the Trenton bank, received cash for the check, turned the cash over to his father, and has never seen it since that time. After Chris acquired all of the money that had been in the bank accounts in the names of his sons and in his name he told Steve of his decision to leave the United States. On June 9, 1958, Chris departed the United States, flying from Idlewild Airport, New York City, on TWA Flight No. 890. A few days prior to his departure, Chris instructed Steve and George to cash the checks to be received by them for the five $10,000 bonds and to obtain fifty and one hundred dollar bills for the full $50,000. He told Steve that he would "notify him [Steve] how to send him the money". On July 1, 1958, United *315 States Treasury Check No. 5492 was issued to the order of "Isidoros Thrappas, c/o First Mechanics National Bank, 1 West State Street, Trenton, New Jersey", in the amount of $20,000. On July 1, 1958, United States Treasury Check No. 5496 was issued to the order of "Isidoros Thrappas, 131 1/2 North Broad Street, Trenton, New Jersey", in the amount of $10,000. On July 1, 1958, United States Treasury Check No. 5497 was issued to the order of "George Thrappas, 131 North Broad Street, Trenton, New Jersey" in the amount of $20,000. On July 2, 1958, Steve Thrappas received Check No. 5492 in the amount of $20,000 from the First Mechanics National Bank where it had been forwarded, endorsed the check in his individual name, and requested the bank teller to cash it $50in and $100 bills. On July 2, 1958, Steve Thrappas received Check No. 5496 in the amount of $10,000, addressed to him at 131 1/2 North Broad Street, went to the Trenton Banking Company, endorsed the check in his individual name, and requested the bank teller to cash it in $50 and $100 bills. On July 2, 1958, George Thrappas received Check No. 5497 in the amount of $20,000, addressed to him at 131 North Broad Street, went *316 to the Trenton Saving Fund Society, endorsed the check in his individual name, and asked the bank teller to cash it in $50 and $100 bills. George Thrappas rejected a suggestion of the bank official that he accept a bank check or at least part check and part cash, and insisted on cash. George delivered the cash thus received to Steve. After receiving the $50,000 in cash for the bond-redemption checks on July 2, 1958, Steve retained this money in his possession for about 15 days, packed in a cardboard box previously used for binoculars. At the end of that period he received a letter of instructions from Chris which came from Chios, Greece. Therein Chris instructed Steve to go to New York City with the $50,000 in currency, and deliver it in the Pennsylvania Station to a man named "Joe". Joe's height, the clothes "he was going to wear", as well as the place, the day and time of day the meeting was to take place, were set forth in the letter. Steve was to identify "Joe" by a small passport-size photograph. Four or five days after receipt of the letter of instructions, about July 19, 1958, Steve proceeded to New York City. He met "Joe" in Pennsylvania Station near the travel agency. *317 He told "Joe" that he had received a letter from his father instructing him to deliver the money to "Joe" and he handed "Joe" the box containing the $50,000 in currency. Steve understood that "Joe" would deliver the money to Chris in Greece. Steve destroyed the letter of instructions received from Chris and the photograph of "Joe". On July 8, 1958, a jeopardy assessment was made against Chris Thrappas for income taxes, and additions to tax, as follows: Deficiency
Additions to Tax
Income
Victory
I.R.C. 1939
I.R.C. 1954
I.R.C.
1939
Year
Tax
Tax
Sec. 293(b)
Sec. 6653(b)
Sec. 291(a)
Sec. 294(d)
1940
$ 145.00
$ 72.50
$ 36.25
1941
558.68
279.34
139.67
1942
1,082.38
541.19
270.60
1943
702.07
$128.32
415.20
207.60
$ 124.56
1944
1,943.50
971.75
485.88
291.53
1945
3,170.09
1,585.05
792.53
475.51
1946
1,164.52
582.26
291.13
174.67
1947
727.00
363.50
181.75
109.07
1948
1,004.90
502.45
251.23
150.72
1949
2,338.66
1,169.33
350.81
1950
848.05
424.03
127.20
1951
684.78
342.39
99.56
1952
3,852.38
1,926.19
565.13
1953
2,838.31
1,419.16
425.75
1954
9,474.73
$ 4,737.37
1,429.57
1955
20,976.86
10,448.43
1956
14,575.88
7,287.94
Total
$66,087.79
$128.32
$10,594.34
$22,513.74
$2,656.64
$4,324.08
*318 On July 10, 1958, Henry W. Ryan, a collection officer employed in the Collection Division of the Internal Revenue Service in Trenton, and two other revenue officers, were instructed to go to the New York Restaurant on North Broad Street for the purpose of levying upon the assets of Chris. Upon arriving there, they saw George Thrappas. In reply to a question as to the whereabouts of his father, George told them he was on a vacation. On July 14, 1958, officer Ryan again went to the restaurant and Steve and George told him that their father was on a vacation. On July 25, 1958, when Ryan again went to the restaurant, Steve told Ryan that he owned the business, produced a bill of sale executed by Chris on July 2, 1958, in Chios, Greece, transferrring all the assets of the New York Restaurant to him for $1 and other considerations, and told Ryan "that as far as he knew his father was in Greece." On September 5, 1958, the respondent sent notices to each of the petitioners that the following amounts, constituting their liability as transferees of assets of Chris Thrappas, had been assessed against them under the provisions of the internal revenue laws applicable to jeopardy assessments: *319 Isidoros Thrappas
$56,267.05
Ange Thrappas
1,164.18
Helen Thrappas
902.21
George Thrappas
25,351.65
On September 29, 1958, the assets of the New York Restaurant were seized and sold by the Director of Internal Revenue, Camden, New Jersey, under sealed bid. The assets were purchased by an individual whose name was Kahn for the amount of $325. Kahn was acting on behalf of petitioner Helen Thrappas who was the real purchaser. She paid the $325 from funds she earned while working in the Trenton factory of H. D. Lee Company, Inc., which had not been deposited in her bank account. In October, 1958, Steve received two receipts from Chris, from Chios, Greece, one acknowledging receipt of $30,000 from Steve and the other acknowledging receipt of $20,000 from George. The receipts were undated and were signed by Chris. A letter accompanied the receipts. Steve retained the receipts, but did not retain the envelope in which they came or the letter which accompanied them. Opinion RAUM, Judge: The burden was upon the Commissioner to show that each of the four petitioners was liable as a transferee of assets of the taxpayer, their father, Chris Thrappas. We find on the *320 evidence that no one of the petitioners is thus liable. Chris Thrappas was born in 1902 on an island in Greece named Chios. He came to the United States in 1921, leaving his wife and children in Greece, whom he visited on occasion. For a number of years, apparently at least as far back as 1940 he owned and operated a small restaurant in Trenton, New Jersey, called the "New York Restaurant". In 1947 his eldest son, petitioner Steve Thrappas, then 13 years old, came to the United States, and lived with Chris in a room. Steve attended school for several years, and since then has spent most of his gainfully employed time working in the restaurant. In 1952, petitioner George Thrappas, then 13 years of age, joined his father and brother in Trenton, and, after four years of schooling, he too has worked in the restaurant. In 1956, Chris' wife together with their two daughters, petitioners Ange and Helen, who were then 20 and 19 years of age, came to the United States, and the entire family lived in an apartment in Trenton. Two older sisters remained in Greece. Not long after their arrival, Ange and Helen obtained employment. An audit of the father's Federal income taxes resulted in a proposed *321 determination of a deficiency and additions to tax in the aggregate amount of $106,304.91 for the years 1940 through 1956. This amount is not disputed herein. The father was represented by an accountant and a lawyer, who tentatively had agreed with Government representatives to settle the liability for a smaller amount. The settlement fell through when, on June 4, 1958, the Government representatives refused to accept in settlement an even smaller amount which Chris insisted on offering, after consulting someone else. Thereafter, on June 9, 1958, Chris fled from the United States by airplane to Chios, Greece. His wife and the four petitioners remained behind in the United States. We may first briefly dispose of the alleged transferee liability of the petitioners Ange and Helen, in the amounts of $1,164.18 and $902.21, respectively, based upon deposits which each of them made from time to time in bank accounts in their own names. We are satisfied on the evidence that these deposits had their source in earnings of each of these petitioners, and were not traceable in any manner to assets of their father. Accordingly, the determination of transferee liability against them is disapproved. *322 As to the two sons, the allegedly transferred assets fall into the following categories: (a) bank accounts, (b) $9,250 in cash taken from safe deposit box, (c) five $10,000 Government bonds, (d) the $236.60 premium paid by Chris on policy on life of Steve, and (e) the assets comprising the restaurant. The bank accounts were in various names, some of them in the name of Chris alone, some of them in the individual names of his two sons, and one in the joint names of Chris and Steve. The deposits in all of these accounts had their source in Chris' earnings from the restaurant. However, we cannot find that the sons are liable as transferees in respect of the deposits in the various accounts. Certainly, they were not transferees in respect of the accounts in Chris' name; and we are convinced by the evidence that Chris retained such dominion and control over the remaining accounts that the sons at no time were in fact transferees thereof. When Chris finally decided to flee from the United States, the balances in all the various accounts were withdrawn at his direction, and the funds turned over to him. Such funds were in the hands of the sons for the very brief periods of time required *323 to transport them from the respective banks to the restaurant where they were turned over to the father. These facts cannot support transferee liability in respect of the bank accounts. The evidence compels a like conclusion in respect of the $9,250 in the safe deposit box and the five $10,000 bonds, three of which were in the joint names of Chris and Steve and two in the joint names of Chris and George. Here too, the funds had their source in Chris' earnings, and here too Chris exercised plenary control over the cash in the safe deposit box and the bonds. The cash was taken from the box by Steve and turned over to his father in compliance with instructions received from his father. The bonds were turned in for redemption by Steve and George, at their father's direction. Since a period of some 30 days was required to consummate the redemption, Steve and George did not obtain the proceeds until after their father had departed. However, acting upon instructions received from his father, Steve turned over the entire $50,000 to a special courier in New York, apparently for delivery to the father in Greece. Although the evidence in this respect sounded something like a third-rate mystery *324 story, it nevertheless rang true and we found it credible. We fail to see how the payment by Chris of a premium of $236.60 on a policy on the life of Steve constituted a transfer of assets to Steve inasmuch as the beneficiaries named in the policy were Chris and his wife, absent a showing that Steve had powers under the policy which could be exercised to defeat the beneficiaries' interest. The final item represents the business assets of the New York Restaurant which was the subject of a bill of sale to Steve executed by Chris in Greece on July 2, 1958. We agree with the Government that Steve became liable as transferee in respect of this transfer. However, the assets of the restaurant were seized by the Government and sold on September 29, 1958, for $325, and the Government received the value of the transferred assets. Steve's liability in respect to this transfer is merely the value of the assets, namely, $325, plus interest thereon as provided by law; but the value of the transferred assets may in turn be applied against that liability. **
We realize, of course, that the taxpayer *325 has outmaneuvered the Government by defeating its efforts to collect a substantial amount in taxes which, on this record, appears to be owing. But collection must be according to law, except to the limited extent outlined above with respect to Steve we cannot approve transferee liability against these petitioners, for they were not in fact transferees. **
Decisions will be entered for the petitioners in Docket Nos. 77729, 77730 and 77731. **
Decision will be entered in Docket No. 77728 in accordance with the foregoing opinion. **
Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Ange Thrappas (also known as Angelica, Anggelite, Anggeliga, Aggeliki and Aggelike Thrappas), Docket No. 77729; Helen Thrappas (also known as Elleni and Ellene Thrappas), Docket No. 77730; George Thrappas (also known as Georgis Thrappas), Docket No. 77731.↩
2. By amended answer this amount has been reduced to $51,842.45.↩
*. The accounts so marked were originally opened in the name of Stephen Thrappas and were then closed and reopened in the name of Isidoros Thrappas, which was his real name. ↩
***. This was a joint account in the name of Isidore Thrappas or Chris Thrappas. It was closed by withdrawal on June 4, 1958, by Isidore Thrappas.↩
**. The balances shown as of June 4, 1958, represent the amounts withdrawn on that date by Steve. ↩
**. Amended by official order of the Tax Court dated April 3, 1961, and signed by Judge Raum.↩
**. Amended by official order of the Tax Court dated April 3, 1961, and signed by Judge Raum.↩
**. Amended by official order of the Tax Court dated April 3, 1961, and signed by Judge Raum.↩
**. Amended by official order of the Tax Court dated April 3, 1961, and signed by Judge Raum.↩